ADAMS & GREGOIRE, INC., A CORPORATION, PLAINTIFF AND
RESPONDENT, *v.* NATIONAL INDEMNITY COMPANY, A
CORPORATION, DEFENDANT AND APPELLANT, AND H. S. DOT-
SON COMPANY, A CORPORATION AND FLYNN INSURANCE
AGENCY, A CORPORATION, DEFENDANTS.

No. 10386.
Submitted September 10, 1962. Decided October 9, 1962.
Rehearing denied October 25, 1962.
375 P.2d 112.

Orin R. Cure (argued orally), Great Falls, Edward M. Borer, Great Falls, for appellant.

George N. McCabe (argued orally), Great Falls, for defendants.

Ray F. Koby (argued orally), Great Falls, James N. Purdy, Great Falls, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal by one of the defendants, National Indemnity Company, from a decision of the district court of Cascade County, Montana, awarding the plaintiff the sum of $3,457 plus interest. The action was brought under the Uniform Declaratory Judgments Act, sections 93-8901 through 93-8916, Revised Codes of Montana, 1947.

The action was brought by Adams & Gregoire, Inc., a Great Falls corporation, hereinafter known as plaintiff, against National Indemnity Company, a Nebraska corporation, hereinafter

known as National; H. S. Dotson Company, a Helena corporation hereinafter known as Dotson; and Flynn Insurance Agency, a Great Falls corporation hereinafter known as Flynn.

The plaintiff was engaged in the business of commercially hauling trailer homes. Flynn was a local insurance agent who maintained a running account for plaintiff. National was engaged in the business of underwriting insurance coverage. Dotson was a general agent or wholesaler for National.

Providing coverage, on trailer homes while being hauled commercially, is unusual underwriting, and not all companies will provide the coverage. National does provide the coverage.

In 1956, Flynn wrote to Dotson and inquired as to rates for commercial haulers. Dotson advised Flynn that National would first have to have an application on hand before approving the coverage, and that since National would not allow a flat cancellation, the premium must be submitted before a policy would be issued. An application was enclosed.

Flat cancellation in this instance refers to the practice of allowing the agent to return the policy for cancellation within a period of time after the policy has become effective, but without a charge for the period it was in effect. The purpose is to allow the agent to have a policy made up on the speculation either that a current customer will renew his expiring policy, or that the agent might be able to sway a new customer to accept this coverage. The testimony was to the effect that National had the policy of no flat cancellations, but that Dotson was the one that adopted the policy requiring prepayment before a policy would be issued.

The letter also stated that the coverage could not be provided with less deductible than $250. The application was not filled out and returned to Dotson at that time.

The testimony indicated that the method of providing coverage on the trailers to be hauled was to insure a particular truck, and to cover any trailer which that truck would haul.

In 1958, plaintiff through Flynn applied for coverage on

two of their trucks. Premium in the amount of $551 was forwarded with each application. Two policies were issued by Dotson each covering one of the trucks. Apparently the premium quoted was incorrect and an additional premium of $5 each was required, however, the policies were not delayed pending receipt of the deficit. The policies when issued were written with a $100 deductible, and Flynn was also advised that Dotson had misunderstood the coverage to be provided, and that no application was necessary.

The plaintiff owned more than two trucks, and on several occasions, instructed Flynn to delete one of the trucks and to add another in place of it. In each case, Dotson dated the change endorsement back to the date of the request.

In March of 1959, the plaintiff contemplated sending a truck not then covered to North Dakota to pick up a new trailer home. The plaintiff advised Flynn to have the particular truck added to the policy in addition to the existing truck.

Up to this time, there had never been an addition made to either of the existing policies. Flynn approximated what the additional coverage would cost, and collected $150 from plaintiff. Flynn then sent the following memo to Dotson:

"To H. S. Dotson
"Helena, Montana
"Attn: Q. Johnson

3-26-59

"SUBJECT: ACEE 32907, Adams & Gregoire, Inc.
"As of this date please add the following truck to this policy: 1958, Chev., 3/4 ton, M-V3E58J103010.
"Also please check with the H. O. and see if we could get a rate if we insured 7 trucks under the same policy.

"Leo P. McNeal (signed)"

This memo received by Dotson on March 27, 1959, a Friday, and on that same date Dotson sent the following letter by regular mail to Flynn:

"Dear Leo:

"We have your memo in which you say to please add a 1958 3/4 Ton Truck to this unit. Did you desire that this replace the present truck or did you desire this to be an additional truck. If this is to be an additional truck we must have additional premium in the amount of $131.20 gross or your check for this amount less your commission of 10% in the National Indemnity Company or a net check of $118.08 if we are to add this as an additional unit as of March 28.

"We await your advices."

Mr. McNeal received this letter on his desk on Monday, March 30th. For a reply he merely told his secretary to send a check to Dotson in the amount of $118.08. The check was prepared, but as it was not deemed important to rush the check out by return mail, the check was not mailed out that day.

Sometime near noon of April 1, plaintiff received a telephone call from the driver to the effect that the trailer had been wrecked. The plaintiff contacted Dotson immediately, but Dotson refused to acknowledge that the particular truck was covered by the policy.

Subsequently, on April 22, 1959, an endorsement was prepared adding the truck as of April 2, 1959. Mr. McNeal testified however that the date was as a result of pressure by Dotson.

The jury found as special findings of fact that Flynn was the agent of the plaintiff, but that Dotson had made an unqualified acceptance of the offer to amend the contract. The Honorable Robert J. Nelson then awarded judgment in favor of the plaintiff against defendant National.

National first specifies as error the order of the district court overruling its demurrer on the grounds of misjoinder of causes of action and misjoinder of parties defendant.

National contends that the action against Flynn was one for tort, and that the action against Dotson and National was based on a contract, that under section 93-3203, R.C.M.1947,

the two causes of action could not be combined, and the declaratory judgment could not be used to cure this defect.

In support of this proposition National cites the cases of Town of Manchester v. Townshend, 109 Vt. 65, 192 A. 22, 110 A.L.R. 811; Newsum v. Interstate Realty Co., 152 Tenn. 302, 278 S.W. 56, and Gray v. Defa, 103 Utah 339, 135 P.2d 251, 155 A.L.R. 495.

Town of Manchester v. Townshend, supra, involved an action by one municipality against two other municipalities on a contract implied by statute for reimbursement of funds expended for the care of an indigent person. In issue was the location where the indigent had last resided for a period of three years before moving to Manchester. The majority held that under Vermont's Uniform Declaratory Judgments Act, the action was bad for misjoinder of causes of action. The decision recited that the Uniform Act had not replaced the rules of pleading, but was governed by them. Though the dissent seems to be the better-reasoned opinion, we need not concern ourselves with the problem, for the case at hand is clearly distinguishable. In the Vermont case, the causes of action were upon separate alleged contracts. If there was in fact a contract with one of the other municipalities, it depended upon the existence of facts which would not apply to the finding of another contract for the other municipality. In the case at hand, the two causes of action arise out of the same transaction.

The Tennessee case of Newsum v. Interstate Realty Co., supra, was primarily a case of interpleader in which the plaintiff sought to avoid the payment of two commissions for one sale. The court stated that there was a possibility that there was in fact two validly existing contracts, and that the case was not proper for interpleader, and that it was also not proper for the Uniform Declaratory Judgments Act which was not applicable because the actions arose out of two separate sets of facts. It is obvious that the authority is not suitable for the situation at hand.

The Utah case of Gray v. Defa, supra, involves an appeal from an order of a district judge which ruled on the rights of parties to land, but refused to consider counter-allegations made by the defendants. The holding stands for the proposition that where another action is more suited to the situation (quiet title) that this fact may be taken into consideration in determining whether the district judge abused his discretion in allowing the action to be brought under the Uniform Declaratory Judgments Act, and further that it was error to deny the defendants the right to present evidence on their counterclaims. Not in any way can this be applicable to the case at hand.

■ It is clear that the rights of all parties are so intimately connected by the one transaction that in order to determine the rights of the parties it was necessary to have all of the parties to the transaction as parties to the action. Section 93-8911 requires that all parties be joined who have an interest.

Moreover the liability of National depends upon the existence of an amendment to the contract, and the liability of Flynn depends upon an absence of that same amendment. The action is one that ideally fits the situation.

National also specifies as error the failure of the court to give defendant's Instructions 7, 10a and 11. National also alleges error in the giving of Instructions 8, 9, 10, 11, 12, and 14.

■ Inasmuch as defendant's Instructions 7 and 11, and the Instructions given, 8, 9, 10, 11, and 12, have reference to a finding of agency on the part of Flynn, any objection which National might have had to the instructions becomes nonprejudicial after the jury found as a fact that Flynn was an agent of the plaintiff rather than of Dotson or National.

Instruction 10a reads as follows:

"You are instructed that an insurance company may refuse to enter into a contract of insurance except on terms acceptable to the insurance company and that it is perfectly legal and proper for the insurance company to require that the premium

for the particular insurance desired be actually paid to it before binding coverage or issuing an insurance policy and to refuse to bind coverage or issue an insurance policy until the premium is paid. And you are further instructed that if you find that the defendant H. S. Dotson acting as the general agent of the defendant National Indemnity Company informed the defendant Flynn Insurance Agency that H. S. Dotson would not bind coverage or issue a policy of insurance in National Indemnity Company without first receiving the net premium for such insurance, and if you further find that the defendant Flynn Insurance Agency did not pay the net premium to the defendant H. S. Dotson Company for insurance covering trailers towed by truck involved in this lawsuit until after the accident occurred, then your finding must be in favor of the defendant National Indemnity Company.''

Defendant Flynn objected to the instruction in that inherent in it was the direction to the jury that Flynn was an agent of the plaintiff. This was properly an issue for the jury, and it was not error to refuse to give the instruction as offered by National.

Defendant National objected to the last phrase in Instruction 14, however, they failed to assign a reason for their objection. Section 93-5101 (5) provides that this court cannot reverse a trial on the grounds that an instruction given was not correct, when no proper objection is made to the trial court. A mere objection without assignment of the specific reason for the objection is not a proper objection. Franck v. Hudson, 140 Mont. 480, 373 P.2d 951.

Defendant National's third major specification of error was that the evidence did not support the finding by the jury that Dotson had made an unqualified acceptance of the offer to amend.

The memo which Dotson's employee Johnson sent was not a clear denial of coverage without premium as National contends. Being unclear, reference must be made to the intent

of the parties, and by that we do not mean the secret unexpressed intent of Johnson, but the intent that a reasonable person would acquire from a reading of the memo. Because the memo was not clear, it was not error to refer the issue to the jury to determine what the memo intended to say. The jury had the following facts to guide them:

First, the original letter from Dotson which stated three conditions for providing coverage, the minimum of $250 deductible clause, the requirement of application, and the requirement of prepayment, was in effect countermanded in two of the three particulars. The letter that Dotson sent Flynn when they delivered the policy advised that the application was not required, and the policy was written with only a $100 deductible clause.

Second, the only policy which National had was with reference to flat cancellations, and the policy of prepayment was a requirement imposed by Dotson. Being his own requirement he could waive it at will.

Third, the jury had the letter from Johnson which quoted a premium effective March 28, 1959, even though Johnson knew that the letter could not reach Flynn in time for the money to be delivered to Dotson by March 28, 1959. If the money reached Dotson after that date, there would be a return premium due the plaintiff, but there was no mention of a return premium in the memo.

Fourth, the jury had the information that on two prior changes Dotson had used the date that Flynn had requested the change.

Fifth, the jury had the *de facto* self-serving statement of Johnson to the effect that the letter intended to convey to Flynn that there could be no coverage until the premiums were received.

██ Although the action was equitable, the issues of fact therein were decided by a jury. There was conflicting evidence on the intent of the letter, and the matter was properly sent to

the jury. Their verdict was supported by evidence. The fact that there might have been sufficient evidence to support a verdict the other way, furnishes no ground for disturbing the verdict and judgment. Estate of Dillenburg, 136 Mont. 542, 349 P.2d 573.

The other specifications of error are without merit and will not be discussed herein.

The decision of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICES ADAIR, and CASTLES, and DISTRICT JUDGE E. E. FENTON, sitting in place of MR. JUSTICE STANLEY M. DOYLE, concur.